1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RICHARD G. SUGDEN,

       Plaintiff,

   v.

AMERICAN AVIONICS, INC.,

       Defendant.

Case No.  C05-936RSL

ORDER GRANTING
DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

     This matter comes before the Court on a motion for partial summary judgment filed by defendant American Avionics, Inc. ("American").  Plaintiff Richard G. Sugden ("Sugden") alleges breach of contract, negligent misrepresentation, negligence, and violations of Washington's Consumer Protection Act.  Plaintiff seeks relief including reimbursement of legal expenses incurred in an enforcement action against him by the Federal Aviation Administration ("FAA").  American moves to dismiss plaintiff's claims for damages arising out of the enforcement action.  (Dkt. # 16).  For the reasons set forth below, the Court grants the motion.

## I.  FACTS

     The following facts are either undisputed or, where a dispute exists, resolved in plaintiff's favor.  In November 2001, Sugden brought his Grumman Turbine Mallard

ORDER GRANTING DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT- 1

1    airplane, federal registration number N730RS ("the airplane"), to American for extensive

2    work.  Declaration of Rulon Horsley (Dkt. # 18) at ¶ 5.  Even after "running into

3    numerous ... problems" American stated that "a realistic completion date is the middle of

4    February."  Id., Ex. 3.  After several additional lengthy delays in the work, American

5    informed Sugden that the airplane would be ready by May 22, 2002.  Declaration of

6    Richard G. Sugden ("Sugden Decl.") (Dkt. # 24) at ¶ 3.  When Sugden arrived at

7    American's facility on May 22 the airplane was not yet ready, and over the next two days

8    he participated in working on it.  Id. at ¶¶ 3-4.  On May 24, 2002, Sugden flew the

9    airplane to Idaho.  Id. at ¶¶ 9-10.  American gave no indication that the airplane was

10   unsafe or illegal to fly, and its employees helped Sugden prepare for departure and waved

11   goodbye.  Declaration of G. Val Tollefson ("Tollefson Decl.") (Dkt. # 17), Ex. P at p.

12   152.  Furthermore, shortly before Sugden flew away, FAA-certified aircraft inspector

13   Robert Taylor ("Taylor") gave Sugden a sticker for the airplane's log book stating that the

14   airplane was "approved for return to service" after its required periodic inspection.

15   Sugden Decl., Ex. 1.

16        As the owner and operator of the airplane, Sugden was legally required to ensure

17   that certain entries were made in the aircraft maintenance records before flying the

18   airplane.  14 C.F.R. §§ 91.405-407.[1]  Sugden stated, in testimony before the FAA, that he

19

20        [1]The regulations provide in pertinent part:
     § 91.405   Maintenance required.
21   Each owner or operator of an aircraft ... (b) Shall ensure that maintenance personnel make
22   appropriate entries in the aircraft maintenance records indicating the aircraft has been
     approved for return to service[.]
23   § 91.407   Operation after maintenance, preventive maintenance, rebuilding, or alteration.
     (a) No person may operate any aircraft that has undergone maintenance, preventive
24   maintenance, rebuilding, or alteration unless–
25        (1) It has been approved for return to service by a person authorized under § 43.7

26   ORDER GRANTING DEFENDANT'S MOTION
     FOR PARTIAL SUMMARY JUDGMENT- 2

1 did not look at the airplane log book to check for entries related to the work American

2 had done.  Tollefson Decl., Ex. P at p. 149-150.

3       The FAA commenced an enforcement action soon after the airplane left

4 American's facility.  The FAA became aware that the airplane had departed, and

5 American told the FAA that the airplane had been "un-airworthy" [sic] when it left.

6 Declaration of Christian Moller (Dkt. # 23), Ex. C.  The FAA suspended Sugden's pilot

7 license, ruling that he had violated regulations requiring that he ensure the existence of

8 certain maintenance entries and prohibiting unsupervised maintenance.  Tollefson Decl.,

9 Ex. L at p. 1.  The National Transportation Safety Board ("NTSB") affirmed, slightly

10 reducing the license suspension period.  Id., Ex. B at p. 212.  Sugden appealed to the

11 Ninth Circuit, and ultimately the parties settled.  Id., Ex. L. at p.1.  Without agreeing to

12 the FAA's factual assertions or legal conclusions, Sugden agreed to withdraw all appeals.

13 Id. at p. 2.  The settlement terms specifically disclaimed any collateral estoppel or *res*

14 *judicata* effect of the FAA proceedings on any other litigation.[2]  Id.

15                             **II. DISCUSSION**

16 **A.**     **Summary Judgment Standard.**

17       On a motion for summary judgment, the Court must "view the evidence in the light

18 most favorable to the nonmoving party and determine whether there are any genuine

19

20      of this chapter; and

     (2) The maintenance record entry required by § 43.9 or § 43.11, as applicable, of

21      this chapter has been made.

22      [2]The settlement provides that "nothing in this settlement, nor in the Orders

23 referenced herein shall inure to the benefit of any third parties nor shall any part of this
settlement, including such orders be deemed to be an admission against Respondent's
interest, nor shall it be deemed to be collateral estoppel or *res judicata* except in a

24 proceeding by the FAA to enforce the term and conditions of this settlement as the order

25 referenced herein."

26

1   issues of material fact." Holley v. Crank, 386 F.3d 1248, 1255 (9th Cir. 2004).  All

2   reasonable inferences supported by the evidence are to be drawn in favor of the

3   nonmoving party.  See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir.

4   2002).  "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving

5   party, summary judgment must be denied."  T.W. Elec. Serv., Inc. v. Pacific Elec.

6   Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

7   **B.      Reimbursement of Legal Expenses.**

8          A federal court exercising diversity jurisdiction applies the substantive law of the

9   state in which it sits.  Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).  Under

10  Washington law, a party is not liable for an opposing party's legal expenses arising from

11  a separate action, unless it is solely responsible for the opposing party's exposure to the

12  separate action.  Tradewell Group, Inc. v. Mavis, 71 Wn. App. 120, 128 (1993); Woodley

13  v. Benson & McLaughlin, P.S., 79 Wn. App. 242, 248 (1995).  The "ABC rule" states

14  that A will be liable for B's litigation expenses if a wrongful act or omission by A toward

15  B exposes B to litigation with C, and C was not connected with A's initial wrongful act

16  or omission.  Woodley, 79 Wn. App. at 246.  However, "[i]f Party A's conduct is not the

17  only cause of Party B's involvement in the litigation, and particularly if Party B's own

18  conduct contributed to Party B's exposure in the litigation," Party B cannot recover

19  litigation expenses.  Id.

20         In the FAA proceedings, Sugden acknowledged that he did not check the

21  airplane's log books to see if required maintenance entries had been made.  Tollefson

22  Decl., Ex. P at p. 149-150.  In the case before this Court, plaintiff has not retracted that

23  statement or disputed its truth.  Nor has he disputed the admissibility of that testimony.

24  While on a summary judgment motion reasonable inferences will be drawn in favor of the

25

26  ORDER GRANTING DEFENDANT'S MOTION
    FOR PARTIAL SUMMARY JUDGMENT- 4

1   nonmoving party, here no factual dispute exists.  By not examining the log books to

2   determine if the required entries had been made, plaintiff exposed himself to the

3   possibility of an FAA enforcement action.  Thus, as a matter of law, defendant could not

4   have been the sole cause of plaintiff's exposure to that litigation.

5        Plaintiff argues that his reliance on inspector Robert Taylor's "return to service"

6   sticker presents a genuine issue of material fact that makes summary judgment

7   inappropriate.  Furthermore, he argues that but for American's failure to inform him that

8   the airplane was unairworthy, he would not have been exposed to the FAA litigation.

9   Neither of these issues excuses plaintiff's breach of the affirmative duty to ensure log

10  book entries had been made.

11       FAA regulations require that "each person" who maintains or alters an aircraft

12  "shall make an entry in the maintenance record [describing the] work performed."  14

13  C.F.R. § 43.9.  Plaintiff was required to check for log book entries related to all

14  maintenance and alterations that had been done, not just entries related to the inspection.

15  14 C.F.R. § 91.405(b).  Unless plaintiff believed that Taylor was responsible for all the

16  work performed by American, Taylor's "return to service" sticker is not relevant to the

17  present motion.  Plaintiff has not asserted that belief, nor would the record support such

18  an assertion. Plaintiff hired American to perform the major work on the airplane, and

19  Taylor was not an American employee.  Sugden Decl. at ¶ 2.  Plaintiff could not

20  reasonably rely on Taylor's sticker to cover American's work.

21       Plaintiff argues that his good-faith reliance on American's implied representations

22  that the airplane was airworthy presents a genuine issue of material fact.  Plaintiff cites a

23  case where a pilot reasonably relied on an aircraft mechanic's representations of

24  airworthiness.  Swan v. Adm'r, NTSB Order No. EA-4308 (1994).  That case is readily

25

26  ORDER GRANTING DEFENDANT'S MOTION
    FOR PARTIAL SUMMARY JUDGMENT- 5

1  distinguished from this one by the existence of log book entries.  While certain technical

2  deficiencies existed, the pilot's underlying duty to ensure that maintenance personnel

3  made appropriate entries in the log book was not breached.  Id. at p. 1.  In the case before

4  this Court, the entries for American's work were totally absent.

5      In short, plaintiff's admitted failure to ascertain whether appropriate log book

6  entries had been made violated the plain language of 14 C.F.R. §§ 91.405-407.  He

7  exposed himself to potential FAA enforcement proceedings, and thus does not meet

8  Washington's strict standard for recovering attorney's fees.  Woodley, 79 Wn. App. 242.

9  **C.    Collateral Estoppel.**

10      Because the Court finds, as a matter of law, that plaintiff's own actions were at

11 least a partial cause of the FAA enforcement action, the parties' arguments regarding

12 collateral estoppel need not be addressed.

13                     **III.  CONCLUSION**

14      For the foregoing reasons, the Court GRANTS defendant's motion for partial

15 summary judgment (Dkt. # 16).  Plaintiff's claims for litigation expenses incurred in the

16 FAA enforcement action are dismissed.

17

18      DATED this 10th day of May, 2006.

19

20                              _MW S Lasnik_

21                              Robert S. Lasnik
                               United States District Judge

22

23

24

25

26 ORDER GRANTING DEFENDANT'S MOTION
   FOR PARTIAL SUMMARY JUDGMENT- 6